JOSEPH ROBERT GIANNINI, ESQ.
12016 Wilshire Blvd. Suite 5
Los Angeles CA 90025
Phone 310 804 1814
Email holmes@lawyers-inc.com

Attorney for Plaintiff,

# UNITED STATES DISTRICT COURT FOR THE

# DISTRICT OF NEW JERSEY

| | |
|---|---|
| LAWYERS FOR FAIR RECIPROCAL ADMISSION,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES, ATTORNEY GENERAL MERICK B. GARLAND, Et.al<br><br>Defendants, | Case No.: 3-22-cv-02399 GAH-RAL<br><br>**NOTICE OF MOTION AND MOTION TO RECUSE THE HON. MAGISTRATE JUDGE RICHARD A. LLORET; MEMORANDUM OF POINTS AND AUTHORITIES; 28 U.S.C. 455** |

Plaintiffs respectfully request the Court to recuse the Hon. Magistrate Judge RICHARD A. LLORET forthwith for the following reasons: (i) because the Plaintiffs' loss of First Amendment freedoms for even minimal periods of time constitutes an irreparable injury; (ii) to avoid delay and the needless duplication of judicial resources; (iii) the national importance of the multiple First Amendment and

1

separation of powers issues presented: and (iv) the fact the Hon. GERALD A. McHUGH has previously decided a similar local Rule challenge under the *professional speech* doctrine and *rational basis review* that was affirmed by the Third Circuit and recent Supreme Court precedent squarely overruling Third and Ninth Circuit *professional speech* licensing cases and rejecting *rational basis review*; and (v) the statutory standards for recusal set forth in 28 U.S.C. § 455.

## MEMORANDUM OF POINTS AND AUTHORITIES

1. **THE SUPREME COURT HAS CHANGED THE LANDSCAPE FOR PROFESSIONAL SPEECH AND FIRST AMENDMENT JURISPRUDENCE REJECTING THE RATIONAL BASIS REVIEW STANDARD THIS COURT PREVIOUSLY APPLIED TO A LOCAL RULE CHALLLENGE**

This case concerns conceptual change concerning equal *citizenship* rights in the United States Courthouse advanced by the American Bar Association and Supreme Court. Barbara McClintock[1] was born in 1902. She earned a Ph.D. from Cornel in 1927. She is in an American scientist and cytogeneticist who was awarded the 1983 Nobel Prize in Physiology or Medicine. She developed the technique for visualizing corn chromosomes and used microscopic analysis to demonstrate many fundamental genetic ideas. One of those ideas was the notion of genetic recombination by crossing-over during meiosis—a mechanism by which

---

[1] Barbara McClintock - Wikipedia

2

chromosomes exchange information. One day in 1930, she stood with a group of scientists in the cornfields around Cornell University, pondering the results of a genetics experiment that did not pan out according to the received wisdom. After a half hour, she jumped up and shouted "Eureka I have found it." Barbara McClintock spent so much time with her plants in the preparation of their genetic material that she knew them intimately as individuals. She literally took the time to make friends with them and to see them in their own terms. *She developed a feeling for the organism*. The problem was nobody believed her because her theory contradicted the received wisdom of that era. She was derided for her "jumping genes[2]" theory. Her colleagues thought she had gone mad. This was decades before Watson and Crick's Noble Prize work on the DNA double helix and decades before the gene cloning and recombination scientific advances.  McClintock said, "*When you suddenly see the problem*, something happens that you have the answer – before you are able to put it into words. It is all done subconsciously. This has happened to me many times. I am so absolutely sure I don't have to tell anybody, I'm just sure this is it."   In reference to her decision 20 years earlier to stop publishing detailed accounts of her work because nobody believed her, she wrote in 1973:

---

[2] Robert M Sapolsky, *Behave: The Biology of Humans at Our Best and Worst*. Penguin Publishing Group. Kindle Edition, Chapter 47  Dr. Sapolsky is a professor of Neuroscience at Stanford and a MacArthur Genius Award recipient.

> **Over the years I have found that it is difficult if not impossible to bring to consciousness of another person the nature of his tacit assumptions when, by some special experiences, I have been made aware of them. This became painfully evident to me in my attempts during the 1950s to convince geneticists that the action of genes had to be and was controlled. It is now equally painful to recognize the fixity of assumptions that many persons hold on the nature of controlling elements in maize and the manners of their operation. <u>One must await the right time for conceptual change</u>**. [3] (Emphasis added)

The ABA in embarking on a conceptual change has concluded experienced attorneys do not need to take another entry-level bar exam. According to national studies undertaken by the American Bar Association, experienced attorneys have already established their competence by their admission and have demonstrated that they are not a threat to the public by their experience. The ABA recommends all states and federal district court provide reciprocal admission on motion to sister-state attorneys in good standing. In 2019, over 16,000 lawyers were admitted to the bar of a second state either by admission on motion for experienced attorneys or transfer of UBE scores. Thirty-eight states have adopted the UBE exam including New Jersey, which does not test state law. Only eight states have not adopted some form of full faith and credit reciprocal admission on motion.[4]

In the federal admission context, there is no difference in attorney licensing regardless of the state of admission or office location in the United States Supreme

---

[3] *See* footnote 1. Wikipedia.
[4] California, Delaware, Florida, Hawaii, Louisiana, Nevada, Rhode Island, and South Carolina.

(Supreme Court Rule 5), U.S. Courts of Appeal (FRAP 46), or practice before federal administrative agencies (5 U.S.C. § 500(b)) as there is no difference in federal marriage license qualifications based on state law. The local Rules in 1/3 of the 94 District Courts also do not discriminate for or against any class of citizens. This case thus raises issues of national importance because it calls into question the lawfulness of local Rules that dispense unequal citizenship rights in the majority of United States District Courthouse.

Plaintiffs aver the attorney *admission* local Rules that deny reciprocal admission to lawyers in good standing licensed in forty-nine states and that compel all American citizens to associate with a forum state lawyer or forfeit their statutory right to counsel in the United States District Court are antiquated, egregiously wrong, and facially unconstitutional. Plaintiffs aver the balkanized and uneven local Rules have nothing what-so-ever to do with merit or competence: All novice forum state attorneys (the *special favorites*) are categorically qualified, and all experienced lawyers from forty-nine states (the *subordinate second-class citizens*) are categorically disqualified. "[T]he concept that government may restrict the speech of some elements of our society in order to enhance the relative voice of others is wholly foreign to the First Amendment." *Citizens United v, FEC*, 130 S.Ct. 876, 905 (2010). These nonuniform and disparate local Rules are constructed on the absurd and arbitrary fiction — that forum state law that has no jurisdiction or application

*outside of the forum state* — should control federal jurisdiction and application of federal law *inside the United States Courthouse*. Plaintiffs aver this is delegation running riot. *See* Separation of Powers Cause of Action ¶¶ 87-97.

### PROFESSIONAL SPEECH AND RATIONAL BASIS REVIEW —

Plaintiffs further aver that prior court decisions upholding this federal local Rule discrimination, including this Court's prior decision in *NAAMJP v. Simandle*, under the *professional speech* doctrine and rubber-stamp *rational* basis in the Third Circuit, and in most circuits fail to appreciate the liberties at stake. More importantly, they have been disavowed and overturned by a sea change in Supreme Court precedent.[5] (The Ninth Circuit moved from *rational* basis to the *intermediate* standard of review in 2005.[6] ) The Supreme Court has changed the legal landscape.

---

[5] *NAAMJP v. Simandle*, 658 Fed.Appx. 127 (3d Cir. 2016), unpublished 3rd Circuit 2016 upholding N. J. District Court local Rules as *rational* and relying on the *professional speech doctrine*. The Third Circuit held "The assumptions underlying these rationales may be erroneous, but the very fact that they are arguable is sufficient, on rational-basis review, to immuniz[e] the [rule] from constitutional challenge." *Id.* at 130. *NAAMJP v. Lynch*, 826 F. 3d 191 (4th Cir. 2016), upholding District Court local Rules under *rational* basis review. "[T]he *professional speech* doctrine allows the government to "license and regulate those who would provide services to their clients for compensation without running afoul of the First Amendment." *Id.* at 195. *NAAMJP v. Howell*, 851 F. 3d 12, 19-20 (D.C. Cir. 2017) upholding local Rules as *rational* relying on the *professional speech* doctrine. Each of these cases upholding local Rules as *rational* under the *professional speech doctrine* cite each other as precedent. Thus, misapplication of law based on the so-called *professional speech* doctrine and *rational* basis review is piled on each other.

[6] *See NAAMJP v. Berch*, 773 F.3d 1037 (9th Cir. 2014), upholding and applying intermediate time, place, manner review to First Amendment bar admission

It recently and squarely rejected the so-called *professional speech* doctrine. *See NIFLA v. Becerra*, 138 S.Ct. 2361 (2018), overturning the Ninth Circuit and citing with disapproval lower court decision applying the so-called *professional speech* doctrine, including the Third Circuit's decision in *King v. Governor of New Jersey,* 767 F.3d 216, 232 (C.A.3 2014). *Id.* at 2371. The Supreme Court has also squarely held *rational basis* review is foreign to its First Amendment jurisprudence. *See Janus v. American Federal of State, County, and Municipal Employees* 138 S. Ct. 22448, 2465 (2018) ("This form of minimal [rational basis] scrutiny is foreign to our free-speech jurisprudence.").

**CONTENT DISCRIMIMINATION** — See also *Reed v. Town of Gilbert,* 135 S.Ct. 2218 (2015) overturning the Ninth Circuit's definition of content-discrimination. A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of "animus toward the ideas contained" in the regulated speech. *Id*. at 2228

**NEUTRAL AND GENERALLY APPLICABLE** — Likewise, the Supreme Court has recently and dramatically changed the legal landscape in reversing the Third Circuit in *Fulton v. City of Philadelphia*, 141 S.Ct. 1868 (2021).

---

challenge to Arizona District Court local Rules; *Mothershed v. Justices of Sup. Court*, 410 F. 3d 602, 611 (9th Cir. 2005)(applying intermediate review to case filed by a licensed attorney questioning Arizona Supreme Court rules). However, intermediate review is by definition inapplicable when the government engages in content, or viewpoint, or speaker discrimination.

There, the City of Philadelphia refused to allow a Catholic Services organization to continue to place adopted children in homes unless the religious organization agreed to certify same sex marriage couples as foster parents. Petitioner challenged this law under the First Amendment free *speech* and free *exercise* clauses. The District Court and the Third Circuit upheld this law as a *neutral* and *generally applicable* law. The Supreme Court unanimously invalidated this law under the free exercise clause, and thus did not address the free speech claim. The Court ruled that "it is plain that the City's actions have burdened CSS's religious exercise by putting it to the choice of curtailing its mission or approving relationships inconsistent with its beliefs." *Id*. at 1874. Concerning *neutrality*, "Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature. *Id*. 1877. Concerning *general applicability*, the Court held, "A law is not generally applicable if it "invite[s]" the government to consider the particular reasons for a person's conduct by providing "'a mechanism for individualized exemptions."' *Id*. at 1877. "The question, then, is not whether the City has a compelling interest in enforcing its non-discrimination policies generally, but whether it has such an interest in denying an exception to CSS." *Id*. at 1881.

Here, Plaintiffs aver the local Rules in the Third Circuit and in other Circuits are not *neutra*l and *generally applicable* because they favor the *viewpoints* and the *speech* of forum state lawyers and they disfavor the *viewpoints* and *speech* of lawyers

8

licensed in forty-nine other states. They are not *neutral* because they compel all citizens to put their faith in a forum state attorney or forfeit their substantive right to counsel in the U.S. District Courthouse. They are not *generally applicable* because there are a host of exceptions to admission under the local Rules and under the state laws including tit-for-tat provisions that some District Courts (including New Jersey) vicariously adopt. Also, federal government lawyers can be admitted anywhere. Plaintiffs further allege the compelling question here is not whether District Judges have a compelling interest in preserving their *general* admission local Rules; rather, the question is whether they have a compelling interest in not providing an exception for admission to lawyers licensed in forty-nine states, when one-third of the District Court do not restrict *general* admission privileges to forum state lawyers. Plaintiffs allege there is no constitutionally analytical difference between government-imposed restrictions on free *exercise* and the right to freely *petition the government* for the *redress of grievances*. Plaintiffs aver if the government is prohibited from compelling citizens to exercise a specific religion, it is prohibited from compelling citizens to associate and petition the government with a specific mandatory bar association. The citizen's right to *independent* counsel is priceless.

**VIEWPOINT DISCRIMINATION** — The United States, by enforcing disparate licensing local Rules, suppresses the viewpoints of a disfavored class of licensed lawyers, citizens, and corporations. A subject that is first defined by content

9

and then regulated or censored by mandating only one sort of comment is not viewpoint neutral. To prohibit all sides from criticizing their opponents makes a law more viewpoint based, not less so. *Matal v. Tam*, 137 S.Ct. 1744, 1766 (2017). In *Matal*, the Supreme Court invalidated a clause in the federal trademark law that denied approval to any mark that disparaged members of a racial or ethnic group. The Court held that the clause was an unconstitutional speech restriction, explaining, "[T]hat is viewpoint discrimination: Giving offense is a viewpoint." *Matal,* 137 S. Ct. at 1763. "A law or policy permitting communication in a certain manner for some but not for others raises the specter of content and viewpoint censorship. This danger is at its zenith when the determination of who may speak and who may not is left to the unbridled discretion of a government official." *Lakewood v. Plain Dealer Publishing Co*, 486 U.S. 750, 763 (1988). A law found to discriminate based on viewpoint is an `egregious form of content discrimination,' which is `presumptively unconstitutional.'" *Id.* at 1766 Therefore, "[t]he Court's finding of viewpoint bias end[s] the matter." *Iancu v. Brunetti,* ___ U.S. ___, 139 S. Ct. 2294, 2302, 204 L.Ed.2d 714 (2019). "If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson,* 491 U.S. 397, 414, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989).

In *Greenberg v. Haggerty*, 491 F. Supp. 3d 12 (E.D. PA 2020), the Hon. CHAD F. KENNEY entered a preliminary injunction and invalidated amendments to the Pennsylvania Rules of Professional Conduct. His Honor concluded "[t]he Court's finding of viewpoint bias end[s] the matter. *Id*. at 32. The challenged disparate local Rules constitute viewpoint discrimination. That ends the matter. The local Rules are facially unlawful viewpoint discrimination.

**SPEAKER DISCRIMINATION** — Likewise, the government and the judiciary are prohibited from favoring one speaker over another. In *Citizens United v. Federal Election Commission*, 130 S.Ct. 876 (2010):

> Quite apart from the purpose or effect of regulating content, moreover, the Government may commit a constitutional wrong when by law it identifies certain preferred speakers. By taking the right to speak from some and giving it to others, the Government deprives the disadvantaged person or class of the right to use speech to strive to establish worth, standing, and respect for the speaker's voice. The Government may not by these means deprive the public of the right and privilege to determine for itself what speech and speakers are worthy of consideration. The First Amendment protects speech and speaker, and the ideas that flow from each. *Citizens United*, 130 S.Ct. at 890
> …
> Any effort by the Judiciary to decide which means of communications are to be preferred for the particular type of message and speaker would raise questions as to the courts' own lawful authority. Substantial questions would arise if courts were to begin saying what means of speech should be preferred or disfavored. *Id*. at 890 (Emphasis added)

**PRIOR RESTRAINT AND PETITION THE GOVERNMENT INEQUALITY**

Prior restraints on First Amendment rights are presumptively unconstitutional. *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558, (1975). In its simple,

most blatant form, a prior restraint is a law which requires submission of speech to an official who may grant or deny permission to utter or publish it based upon its contents. *Alexander v. United States*, *supra*, 509 U.S. 544, 556. (KENNEDY dissenting). The local Rules are a prior restraint because they compel the plaintiffs to pass a state administered content-based licensing exam, virtually identical to the licensing of printing presses in the 17th Century, in order to exercise their First Amendment freedoms to speak as a lawyer, associate with their client as a lawyer, and petition the government for the redress of grievances as a lawyer, in some United States Courthouses, but not others.

In *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49 (1993), in construing the right to *petition,* the Court held "that litigation could only be enjoined when it is a sham. To be a sham, first, it must be objectively baseless in the sense that no reasonable litigant could expect success on the merits; second, the litigant's subjective motive must conceal an attempt to interfere with the business relationship of a competitor …through the use of government process — as opposed to the outcome of that process — as an anti-competitive weapon." *Id*. at 60-61. Plaintiffs submit the local Rules, on their face, violate the Petition Clause because they presume all licensed lawyers from forty-nine states will file sham petitions for an anti-competitive purpose and only file sham petitions.

most blatant form, a prior restraint is a law which requires submission of speech to an official who may grant or deny permission to utter or publish it based upon its contents. *Alexander v. United States*, *supra*, 509 U.S. 544, 556. (KENNEDY dissenting). The local Rules are a prior restraint because they compel the plaintiffs to pass a state administered content-based licensing exam, virtually identical to the licensing of printing presses in the 17th Century, in order to exercise their First Amendment freedoms to speak as a lawyer, associate with their client as a lawyer, and petition the government for the redress of grievances as a lawyer, in some United States Courthouses, but not others.

In *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49 (1993), in construing the right to *petition,* the Court held "that litigation could only be enjoined when it is a sham. To be a sham, first, it must be objectively baseless in the sense that no reasonable litigant could expect success on the merits; second, the litigant's subjective motive must conceal an attempt to interfere with the business relationship of a competitor …through the use of government process — as opposed to the outcome of that process — as an anti-competitive weapon." *Id*. at 60-61. Plaintiffs submit the local Rules, on their face, violate the Petition Clause because they presume all licensed lawyers from forty-nine states will file sham petitions for an anti-competitive purpose and only file sham petitions.

**IRREPARABLE INJURY** — "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Greenberg v. Haggerty*, *supra*, 491 F. Supp. 3d at 33. Moreover, Plaintiffs' Request for Leave to File a Legal Memorandum of Supreme Court First Amendment attorney speech cases demonstrates (ECF 5) demonstrates that restrictions that suppress an attorney's First Amendment freedoms are subject to strict scrutiny review, in which the government bears the burden of proof.

In sum, the Hon. Magistrate Judge RICHARD A. LLORET should be recused forthwith for the following reasons: (i) because the Plaintiffs' loss of First Amendment freedoms for even minimal periods of time constitutes an irreparable injury; (ii) to avoid delay and the needless duplication of judicial resources; (iii) the national importance of the multiple First Amendment and separation of powers issues presented: and (iv) the fact the Hon. GERALD A. McHUGH has previously decided a similar local Rule challenge and recent Supreme Court precedent overruling recent Third and Ninth Circuit professional speech and licensing cases.

## II.   THE HONORABLE MAGISTRATE JUDGE SHOULD BE RECUSED BASED ON 28 U.S.C. § 455

The Hon. Magistrate Judge RICHARD A. LLORET is not an Article III court judges. He does not have life tenure. He has not been nominated by the president of approved by the Senate. He is dependent on the good will and favor for his continued

livelihood as a magistrate on his judicial colleague, many of whom are his superior (defendant Chief Judge SANCHEZ) and many of whom are defendants in this proceeding (defendant Third Circuit Judicial Council judges). His Honor is thus in a Catch 22 because he is a trustee and officer of the defendant parties in this proceeding.

It appears his Hon. has a mandatory and *sua sponte* duty to himself. First, 28 U.S.C. § 455 provides:

**(b)** He *shall* also disqualify himself in the following circumstances: …

**(i)     Is a party to the proceeding, or an officer, director, or trustee of a party**;

Disqualification under 28 U.S.C. § 455(b) cannot be waived. *See* 28 U.S.C. § 455 (e):

No justice, judge, or magistrate judge shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b).

Section 455 is self-enforcing; it places the burden on the judge himself or herself to identify the existence of grounds for recusal  *Liteky v. United States*, 510 U.S. 540, 548 (1994).

Second, his Honor should also recuse himself under 455 (b)(1) because he may have  knowledge of disputed evidentiary facts concerning the Local Rules, and

because of bias in favor of colleagues who have adopted and have affirmed these challenged Local Rules including the Hon. GERALD A. McHUGH.

§ 455. Disqualification of justice, judge, or magistrate judge

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

Third, recusal is also required where the judge, or a lawyer with whom the judge previously practiced law, was a "material witness" concerning the "matter in controversy." 28 USCA § 455(b)(2). The purpose of this provision is to prevent judges from having to pass on the competence and veracity of their own testimony given with respect to a matter presently in controversy before them. *In re Continental Vending Machine Corp.* 543 F.2d 986, 995-996 (2nd Cir. 1976). The Hon. Magistrate Judge RICHARD A. LLORET may be called upon to pass judgment on the testimony or lack of testimony with respect to a matter directly in controversy in this local Rule challenge. Due process forbids a judge from trying his or her own case or any case in which he or she has a direct, personal, substantial, interest in the outcome. *Aetna Life Ins. Co. v. Lavoie* 475 U.S. 813, 821-822 (1986).

Fourth, Paul Ekman is psychology professor at the University of California, San Francisco. He is world famous for his pioneering work on the universality of human emotions and their recognition. See Paul Ekman, *Telling Lies: Clues to*

15

*Deceit In the Marketplace, Politics, and Marriage 3rd Ed*. p. 20 (W.W. Norton & Company 2003).  Dr. Ekman concludes: "We tend to be invested in our friendships and work relationships, and the wish to preserve them may lead us to develop blindness to behaviors that could disrupt them." *Id*. at 337.

 Fifth,  455. Disqualification of justice, judge, or magistrate judge, provides

> (a) Any justice, judge, or magistrate judge of the United States **shall** disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

 In *Frazier v. Heebe,* 482 U.S. 641 (1987), a lawyer challenged the local bar admission Rules of the Eastern District of Louisiana, Chief Judge Heebe was the lead defendant.  The entire Court disqualified itself.  Judges on the Court testified in favor of their own exclusionary local Rules.  The case at bar filed by lawyers challenging the bar admission Local Rules in the Third Circuit is virtually indistinguishable from *Frazier v. Heebe,* because the District of Delaware's Local Rules disqualify lawyers on the basis of office location.  "The goal of section 455(a) is to avoid even the appearance of partiality." *Liljeberg v. Health Services Acquisition Corp*. 486 U.S. 847, 860 (1988).  The statute's use of the word "might" ("might reasonably be questioned") makes clear that a judge should decide "close calls" in favor of removing himself or herself from the case. *New York City Housing Develop. Corp. v. Hart*  796 F.2d 976, 980(7th Cir. 1986);  *In re Chevron U.S.A., Inc*. 121 F.3d 163, 165(5th Cir. 1997).

Section 455(a) requires disqualification "to be evaluated on an objective basis, so that what matters is not the reality of bias or prejudice, *but its appearance*." *Liteky v. United States*, 510 U.S. at 548; *United States v. Bremers* (5th Cir. 1999) 195 F.3d 221, 226 ("recusal may well be required even where no actual partiality exists"). In a criminal case, a judge and U.S. Attorney were close friends who intended to vacation together with their families after the trial. Recusal was required; the close personal relationship could result in a "reasonable question" about the judge's impartiality. *United States v. Murphy* 768 F.2d 1518, 1538-1539(7th Cir. 1985).

Virtually no judge believes he or she is biased for or against any party. However, the latest scientific evidence proves bias is sub-conscious and people are not consciously aware of it. Dr. Steven Novella is a Professor at Yale Medical School. *In Your Deceptive Mind: A Scientific Guide to Critical Thinking Skills*, p 120 (Teaching Company 2012), he writes:

> "Research has demonstrated that when subjects are confronted with a very charismatic person, for example, especially when that person is identified with our own "in" group, if we think that they are "one of us," the subjects will tend to turn off their critical thinking. In a very real sense they will surrender their will to the charismatic person."

"The drive for consistency, also called 'drive for consonance,' between our perceptions of ourselves and our behavior is so important, that we will go out of our way to claim supportive evidence as well-researched and arguments in favor of our ideas as well taken and important, while dismissing contradictory arguments as

stupid, poorly researched, and based on rare occurrences. This has been called 'confirmation bias.' we see what we need to see to be internally consistent." Dalton Kehoe, *Effective Communication Skills*, p. 69 (Teaching Company 2011)  Simply stated, with "confirmation bias" people see, in any given set of facts that go both ways, what they want to see.  "This process is also supported by the unconscious operations of the mind as well. A group of people were having their brains scanned using magnetic resonance imaging while receiving critical information about their favorite presidential candidates. The scans indicated that the reasoning areas of the brain, the frontal lobes, virtually shut down when this dissonant information was being delivered. But when consonance was restored, when they got information that it fit their perceptions by telling them, of course, that the first information was actually a lie, it was fabricated, the emotional circuits of the brain lit up happily." *Ibid*.

     Any magistrate judge's deciding the validity of his or her own Court's local Rules would cause a reasonable person to question their impartiality.  Moreover, for this Magistrate Judge to decide any aspect of this case would be identical to providing sovereignty to a salaried employee to decide whether a decision by the Board of Directors, squarely lodged within the margins of the Board of Directors, was or was not an abuse of discretion. There is a conflict of interest.

In view of the statutory standards set forth in 28 U.S.C. 455, Plaintiffs' motion for recusal of the His Honor the Magistrate Judge should be granted.

Dated: May 30, 2022                      Respectfully submitted,

/s/ *Joseph Robert Giannini*
_____
Joseph Robert Giannini
Counsel for Plaintiffs
LAWYERS FOR FAIR RECIPROCAL ADMISSION

## PROOF OF SERVICE

A true and full copy of this pleading NOTICE OF MOTION FOR RECUSAL OF MAGISTRATE JUDGE has been served by first class mail to:

> U.S. Attorney's Office
> Attn. Phillip R. Sellinger
> 970 Broad St, FL 7
> Newark, NJ 07102

And

> Department of Justice
> Attn. Attorney General Merrick B. Garland
> 950 Pennsylvania Avenue, NW
> Washington, DC 20530-0001

This proof of service is submitted under penalty of perjury.

Dated: May 30, 2022                   /s/ *Joseph Robert Giannini*
_____
JOSEPH ROBER GIANNINI